UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

ENEDEO RODRIGUEZ, JR.,

    Petitioner,

  v.                                 CAUSE NO.: 3:25-CV-238 DRL-SJF

WARDEN,

    Respondent.

OPINION AND ORDER

Enedeo Rodriguez, Jr., a prisoner without a lawyer, challenges his conviction in Elkhart County under Case No. 20C01-1611-F2-000031 pursuant to 28 U.S.C. § 2254. (ECF 2.) He presently moves for a stay of his federal petition and for leave to add new claims to his petition. (ECF 19, 20.)

To understand the motions, it is necessary to delve rather deeply into the facts of Mr. Rodriguez's criminal case and his efforts on multiple fronts to overturn his conviction. The Indiana Court of Appeals set forth the facts underlying his conviction as follows:[1]

> In 2016, Elkhart County Interdiction Covert Enforcement ("ICE"), working with other state and federal law enforcement agencies, received a tip that Alejandro Nava Rodriguez ("Nava") was dealing methamphetamine. Investigators began monitoring and conducting hand-to-hand purchases from Nava, and his associates, Luis Jaquez and Jorge Moreida. Investigators suspected that the three men were methamphetamine dealers and that they were working with a nearby supplier. Using the "buying through" technique, investigators placed large orders intended to "force [the dealers]

---

[1] The court must presume the facts set forth by the state court are correct unless Mr. Rodriguez rebuts them with clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

to go to [their] supplier" and to lead investigators to the source of the methamphetamine. Investigators obtained court orders that allowed for wiretaps, pen registers, and "pings," which provided GPS location data for each investigative subject's cell phone.

Rodriguez resided in New Paris and owned R & R Auto ("R & R"), an auto repair and resale business in Elkhart. Video surveillance frequently captured Moreida at R & R; he would later testify that he worked there occasionally, despite not being on the company's payroll. Wire surveillance also revealed that Moreida and Rodriguez telephoned each other frequently and used language that investigators believed to be coded references to methamphetamine.

On April 18, 2016, investigators conducted a hand-to-hand purchase of methamphetamine from Nava. Nava initially met with an undercover officer to hash out the terms of the deal, drove to Jaquez's house, and then delivered a quarter pound of methamphetamine to the undercover officer. In all, investigators conducted five hand-to-hand purchases from Nava and two from Jaquez. They "were trying to determine whether Mr. Jaquez . . . was above or below Nava" in the drug operation's hierarchy.

On June 29, 2016, investigators conducted a hand-to-hand purchase of four ounces of methamphetamine from Moreida for $4,000. On August 23, 2016, an undercover officer ("UC 3749") went to Moreida's house and agreed to buy an additional half-pound of methamphetamine for $6,400. Moreida told UC 3749 "that he could make it happen; [but that] it would have to be later in that day." Afterwards, wire surveillance revealed that Moreida telephoned Rodriguez, drove to meet him in Elkhart, and that the men drove together to Rodriguez's house in New Paris, remaining there only briefly. Moreida then dropped Rodriguez off at R & R and delivered one-half pound of methamphetamine to UC 3749.

On September 10, 2016, wire surveillance of Nava and Jaquez's cell phone conversations revealed "that they were out" of methamphetamine. Thereafter, GPS data revealed that Rodriguez drove seventy miles to Fort Wayne, remained there for only twenty minutes, and returned to Elkhart. While Rodriguez was en route back to Elkhart, investigators overheard Jaquez and Moreida saying "that the meth, or the dope, or the onions, or whatever they were calling it that day, was coming, [and] it was close. . . ."

Investigators were in concealed positions outside Rodriguez's house when he returned home. They watched as he backed his truck up to his garage, removed a cardboard box from the truck bed, and carried the box into the

2

garage. Approximately twenty minutes later, Rodriguez replaced the same box on his truck bed and covered it with a heavy blanket. An investigator followed in an unmarked car as Rodriguez drove to Jaquez's house, backed up his truck to Jaquez's garage, removed the blanket, and carried the box into Jaquez's garage. Rodriguez left within ten minutes. After Rodriguez left, the wire surveillance team alerted the on-site surveillance team that Nava was now en route to Jaquez's house. Nava arrived soon thereafter, remained onsite only briefly, and then drove to see Juan Rivera, from whom investigators conducted several hand-to-hand purchases during this investigation.

On October 22, 2016, UC 3749 conducted a hand-to-hand purchase of methamphetamine from Moreida. On October 28, 2016, while he was at R & R Auto, Moreida sent a text message to UC 3749 and offered to sell him more methamphetamine. For this hand-to-hand purchase, in addition to wire surveillance and an on-site surveillance unit, investigators also enlisted helicopter surveillance support with video recording capacity. On-site undercover investigators observed as Moreida negotiated with UC 3749. Rodriguez was present for the negotiation, and both men appear in the helicopter surveillance video of the transaction. Moreida and UC 3749 agreed on an $11,000 price for one pound of methamphetamine.

Rodriguez and Moreida then drove to Rodriguez's house, remaining there briefly, during which time Rodriguez retrieved an item, believed to be a digital scale from a vehicle, before re-entering the house. The men then drove to a cell phone store in Elkhart. Rodriguez went into the store, while Moreida proceeded to deliver the methamphetamine to UC 3749 at a nearby dry-cleaning establishment. Afterwards, Moreida picked up Rodriguez.

By now, investigators suspected that Rodriguez was a major methamphetamine supplier: Moreida had both called Rodriguez and received several phone calls from Rodriguez around the time of transactions; Moreida had "trip[ped]" to Rodriguez, whose travel patterns and conduct suggested that he may be a supplier to Jaquez, Nava, and Moreida; and Rodriguez "was physically present or near" at the time of two hand-to-hand purchases coordinated by Moreida. Investigators also suspected that Rodriguez was transporting methamphetamine in R & R's vehicles and conducted surveillance on R & R "for several weeks" during the investigation.

3

> Investigators executed a federal search warrant[2] at Rodriguez's house on November 2, 2016. Rodriguez, his wife, and a young child were present when the search warrant was executed. The November 2, 2016[,] search yielded a significant quantity of methamphetamine in the basement, along with a measuring cup, two digital scales, two vacuum sealing machines, large, industrial resealable bags, bulk quantities of cellophane, a cutting agent, and at least six cell phones. Investigators also recovered methamphetamine crystals and smoking devices from Rodriguez's garage and 240 grams of methamphetamine and a large supply of resealable bags from the stereo speaker of a truck that was parked outside Rodriguez's house.

*Rodriguez v. State*, 102 N.E.3d 942 (Table), 2018 WL 294715, 1-3 (Ind. Ct. App. June 13, 2018) (internal citations, headnotes, and footnotes omitted). The state charged Mr. Rodriguez with dealing in methamphetamine and corrupt business influence. *Id.* at 3. He was found guilty as charged by a jury and sentenced to an aggregate term of 32 years in prison. *Id.* at 9.

He appealed, and his conviction was affirmed by the Indiana Court of Appeals. *Id.* at 9-17. The Indiana Supreme Court denied transfer. *Rodriguez v. State*, 110 N.E.3d 1147 (Table) (Ind. 2018). In October 2018, he filed a post-conviction petition asserting claims of ineffective assistance by trial counsel, including that his trial counsel was ineffective in not challenging the search of his residence. *Rodriguez v. State*, 233 N.E.3d 996 (Table), 2024 WL 1209050, 2 (Ind. Ct. App. Mar. 21, 2024). The petition was denied following a two-day evidentiary hearing, and the Indiana Court of Appeals affirmed. *Id.* at 3-4. His petition to transfer was denied without comment by the Indiana Supreme Court in May 2024. *Rodriguez v. State,* 235 N.E.3d 136 (Table) (Ind. May 23, 2024).

---

[2] Magistrate Judge Michael Gotsch, Sr., who issued the warrant, retired from the bench in 2024.

In June 2024, Mr. Rodriguez filed a federal habeas corpus petition. *Rodriguez v. Warden*, 3:24-CV-469-TLS-JEM (N.D. Ind. closed Nov. 27, 2024). While the petition was pending, he sought leave from the Indiana Court of Appeals to pursue a successive post-conviction petition asserting new claims of wrongdoing by law enforcement and a new ground of ineffective assistance of trial counsel. (ECF 16-16.) His request for leave to file a successive post-conviction petition was denied in July 2024. (ECF 16-17.) He then sought to "withdraw" his federal habeas petition so that he could focus on pursuing additional remedies in state court. *Rodriguez*, 3:24-CV-469-TLS-JEM, ECF 19. This request was granted, and his federal petition was dismissed without prejudice in November 2024.[3] *Id.*

In March 2025, Mr. Rodriguez returned to federal court with a new petition asserting the following claims:[4] (1) his Fourth Amendment rights were violated because law enforcement agents lied in their warrant applications; (2) the prosecutor committed misconduct by withholding evidence from him; (3) his trial counsel was ineffective in failing to challenge the search warrant under the Fourth Amendment; (4) his post-conviction counsel was ineffective in litigating his ineffective-assistance of trial counsel claim; (5) the search of his residence was unreasonable under the Fourth Amendment due to the use of the flash-bang device; (6) the trial judge was biased against him; (7) his Sixth Amendment right to a speedy trial was violated due to delays attributable to the

---

[3] He was cautioned that a strict one-year limitations period applied to federal habeas petitions and was directed to consult the statute to ensure he returned to federal court, if he chose to do so, within the limitations period. *Rodriguez v. Warden*, 3:24-CV-469-TLS-JEM, ECF 19.

[4] He presents his grounds for relief in a rather confusing fashion, and some claims contain various subparts. (ECF 2 at 4-6.) The court has attempted to give his petition liberal construction.

5

prosecution; and (8) "cumulative error" rendered his trial "fundamentally unfair." (ECF 2 at 5-6.)

The respondent argues that all of these claims are procedurally defaulted. (ECF 16.) Mr. Rodriguez has not yet filed a traverse addressing the procedural default arguments, and instead filed a motion for a stay of the petition (ECF 19) and a motion for leave to add an entirely new claim based on an alleged Confrontation Clause violation (ECF 20).

In his motion for a stay, he argues that he "filed a 60(B) Motion in the state court based on newly discovered evidence of fraudulent warrant affidavit and constitutional violations." (ECF 19 at 2.) He asks that proceedings in this federal case be stayed until that appeal has concluded. (*Id.*) However, public records reflect that the Indiana Court of Appeals dismissed his appeal on August 1, 2025. *See Rodriguez v. State*, No. 25A-CR-01637 (Ind. Ct. App. order dated Aug. 1, 2025). The court determined that his "Rule 60(B)" motion was actually an "unauthorized successive petition for post-conviction relief." *Id.* Mr. Rodriguez subsequently moved for an "emergency stay" and other relief, but all of his motions have been denied. *Id.* The court finds no basis to stay the federal case on this ground.

He also moves for a stay so that he can exhaust an entirely new Confrontation Clause claim in light of the Supreme Court's opinion in *Smith v. Arizona*, 602 U.S. 779 (2024). (ECF 19 at 2.) He relatedly moves to amend his federal petition to add this new Confrontation Clause claim. (ECF 20.) Mr. Rodriguez's motion for a stay does not appear to relate to any of the claims in his petition that the respondent argues are procedurally

6

defaulted. (*See* ECF 16, 19.) A federal habeas court has no authority to enter a stay related to procedurally defaulted claims. *Weisheit v. Neal*, __ F.4th __, 2025 WL 2327412, 5 (7th Cir. Aug. 13, 2025).

For Mr. Rodriguez to assert a new claim at this stage, he must satisfy the threshold requirement of timeliness. The Anti-Terrorism and Effective Death Penalty Act (AEDPA) contains a strict statute of limitations, set forth as follows:

> (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of--
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d).

Mr. Rodriguez's conviction became final in December 2018 when the time expired for him to seek review in the United States Supreme Court on direct appeal. *See Gonzalez v. Thaler*, 565 U.S. 134, 150 (2012); U.S. Sup. Ct. R. 13(1). He already had a state post-conviction petition pending at that time, so the federal deadline was tolled. *See* 28 U.S.C.

7

§ 2244(d)(2) ("The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection."). The federal deadline remained tolled until the state post-conviction proceedings came to an end in May 2024, when the Indiana Supreme Court denied his petition to transfer. At that point, the one-year federal limitations period began to run.

Mr. Rodriguez filed a federal petition in June 2024 that was subsequently dismissed without prejudice, but the deadline was not tolled during the time that filing was pending. *Duncan v. Walker*, 533 U.S. 167, 181–82 (2001) (deadline was not tolled under § 2244(d)(2) during pendency of petitioner's first federal habeas petition). Nor was it tolled during his unsuccessful effort to pursue a successive post-conviction petition in state court. *See Martinez v. Jones*, 556 F.3d 637, 638 (7th Cir. 2009). In other words, the federal limitations period ran unimpeded beginning in May 2024 and expired one year later in May 2025. His July 2025 motion seeking to add an entirely new claim thus comes too late.[5]

Mr. Rodriguez suggests that this claim is timely under 28 U.S.C. § 2244(d)(C) because it is premised on *Smith*, in which the Supreme Court clarified prior Confrontation

---

[5] Under limited circumstances, an untimely amendment to a pleading may be deemed to "relate back" to an earlier, timely filed pleading. Fed. R. Civ. P. 15(c); *Mayle v. Felix*, 545 U.S. 644, 655-56 (2005). This doctrine is narrowly applied in the habeas context in light of the strict deadlines imposed by AEDPA. *Mayle*, 545 U.S. at 662. To relate back, an untimely claim must be based on the same "common core of operative facts" as a claim raised in the timely filed petition. *See id.* at 660-61. In essence the claims must be based on the same grounds, and it is not sufficient that the claims all arise out of the same "trial, conviction, or sentence." *Id.* at 664. Mr. Rodriguez's new claim based on an alleged Confrontation Clause violation does not meet this criteria.

8

Clause case law as it relates to out-of-court statements by forensic-testing experts. The Supreme Court held that "when an expert conveys an absent analyst's statements in support of his opinion, and the statements provided that support only if true, then the statements come into evidence for their truth." *Id.*

For a claim to be timely under 28 U.S.C. § 2244(d)(1)(C), a petitioner must not only demonstrate that he is invoking a new constitutional rule, but also that the Supreme Court has made that rule retroactively applicable. *Tyler v. Cain*, 533 U.S. 656, 663 (2001) (holding that "a new rule is not made retroactive to cases on collateral review unless the Supreme Court holds it to be retroactive"). *Smith* was a direct appeal and there is no language in it indicating that it has retroactive application to cases that are on collateral review. At least two district courts called to decide the issue have concluded that *Smith* is not likely to be made retroactive to cases that are on federal habeas review. *See Hisler v. Royce*, No. 1:21-CV-3676, 2025 WL 903847, 13 (E.D.N.Y. Mar. 25, 2025); *Garcia v. Cain*, No. 1:24-CV-52-HSO, 2025 WL 1363109, 5 (S.D. Miss. May 9, 2025) (same). The court finds their reasoning persuasive.

Under Supreme Court precedent, a new rule of criminal procedure ordinarily "does not apply retroactively to overturn final convictions on federal collateral review." *Edwards v. Vannoy*, 593 U.S. 255, 263 (2021). That is because "applying constitutional rules not in existence at the time a conviction became final seriously undermines the principle of finality which is essential to the operation of our criminal justice system." *Id.* (citation and quotations omitted). There are only two exceptions. The first is when a new Supreme Court case "places certain kinds of primary, private individual conduct beyond the

9

power of criminal law-making authority to proscribe." *Teague v. Lane*, 489 U.S. 288, 311 (1989). The opinion in *Smith*, which pertained to admission of certain evidence, does not fall into that category.

The second exception is where the Supreme Court has announced a "watershed" rule of criminal procedure. *Edwards*, 593 U.S. at 263. This exception is exceedingly narrow. *Id.* ("[I]n the 32 years since *Teague* underscored that [watershed] principle, this Court has announced many important new rules of criminal procedure. But the Court has not applied any of those new rules retroactively on federal collateral review."). Indeed, in the Confrontation Clause context, the Supreme Court previously held that *Crawford v. Washington*, 541 U.S. 36 (2004), though certainly seminal, was not a "watershed" case. *See Whorton v. Bocting*, 549 U.S. 406, 421 (2007). Under these circumstances, the holding in *Smith* is inapplicable to Mr. Rodriguez's collateral attack on his conviction. There is no basis to permit him to amend his petition to add this claim or to stay his federal petition while he exhausts this claim in state court.

As best as can be discerned, Mr. Rodriguez also asks for a stay so that he can exhaust two additional claims in state court: a new ineffective-assistance claim based on his trial counsel's alleged "systematic opposition to [his] client's constitutional rights" and a due process claim premised on unspecified "newly discovered fraudulent evidence." (ECF 19 at 2.) He appears to invoke the stay and abeyance procedure outlined in *Rhines v. Weber*, 544 U.S. 269 (2005), but *Rhines* applies to "mixed" petitions, which contain both exhausted and unexhausted claims. *Id.* The claims Mr. Rodriguez wants to exhaust are not contained in his petition.

10

Although Mr. Rodriguez does not formally request leave to add these two new claims to his petition, it would be too late for him to do so. As outlined above, the one-year deadline under 28 U.S.C. § 2244(d)(2)(A) expired in May 2025. Neither of the two claims is premised on a new Supreme Court case made retroactive to cases on collateral review so as to implicate 28 U.S.C. § 2244(d)(2)(C). The factual basis for a claim based on trial counsel's interactions with Mr. Rodriguez at trial would have been known and available for years. He asserts without elaboration that he did not learn the factual basis for the due process "fraudulent evidence" claim until April 2024, but that was more than one year ago, making 28 U.S.C. § 2244(d)(1)(D) inapplicable. He also does not provide sufficient details about what this evidence is or what steps he took to uncover it for the court to determine that he acted diligently. *Villanueva v. Anglin*, 719 F.3d 769, 774 (7th Cir. 2013) (clock starts running under 28 U.S.C. § 2244(d)(1)(D) "at the time a reasonable person would have discovered those facts."). Nor does he identify any state-created impediment that prevented him from asserting these claims within the one-year deadline.[6] 28 U.S.C. § 2244(d)(1)(B).

Even if he could timely amend his petition to add these additional claims, a stay is warranted only when a petitioner has some avenue left in state court to exhaust. *Weisheit v. Neal*, ---F.4th---, 2025 WL 2327412, 5 (7th Cir. Aug. 13, 2025). Mr. Rodriguez does not explain how he would present these claims to the Indiana courts, and it appears his efforts

---

[6] The relation-back doctrine also does not assist him because the new claims he wants to raise involve a different ground of ineffective assistance of counsel that was not previously asserted and a due process claim premised on entirely new facts. *Mayle*, 545 U.S. at 655.

11

to challenge his conviction in state court have come to an end. He already pursued a direct appeal, post-conviction proceedings, an unsuccessful request to file a successive post-conviction petition, and a recent "60(B)" motion that the Indiana Court of Appeals rejected as an unauthorized successive post-conviction petition. It would be inappropriate to stay the federal petition simply to allow Mr. Rodriguez to file more procedurally improper attacks on his conviction in state court. *See id.*

Under these circumstances, a stay of the petition is not warranted. The court also does not find a sufficient basis to permit Mr. Rodriguez to amend his petition to add the new claims he identifies. His motions will be denied. He asks for additional time to file a traverse in the event his motions are denied. (ECF 19 at 3.) This request will be granted, and the court will set a new deadline for Rodriguez to file a traverse.

For these reasons, the court:

(1) DENIES the petitioner's motions (ECF 19, 20); and

(2) EXTENDS the deadline for the petitioner to file a traverse to **October 15, 2025.**

SO ORDERED.

September 11, 2025                                   *s/ Damon R. Leichty*
                                                     Judge, United States District Court

12