UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

ENEDEO RODRIGUEZ, JR.,

    Petitioner,

v.                                    CAUSE NO. 3:25-CV-238 DRL-SJF

WARDEN,

    Respondent.

## OPINION AND ORDER

Enedeo Rodriguez, Jr., a prisoner without a lawyer, filed a habeas corpus petition challenging his conviction in Elkhart County under Case No. 20C01-1611-F2-000031. (ECF 2.) For the following reasons, the petition is denied.

## BACKGROUND

In deciding the petition, the court must presume the facts set forth by the state court are correct unless Mr. Rodriguez rebuts this presumption with clear and convincing evidence. 28 U.S.C. § 2254(e)(1). The Indiana Court of Appeals set forth the facts underlying his conviction as follows:

> In 2016, Elkhart County Interdiction Covert Enforcement ("ICE"), working with other state and federal law enforcement agencies, received a tip that Alejandro Nava Rodriguez ("Nava") was dealing methamphetamine. Investigators began monitoring and conducting hand-to-hand purchases1 from Nava, and his associates, Luis Jaquez and Jorge Moreida. Investigators suspected that the three men were methamphetamine dealers and that they were working with a nearby supplier. Using the "buying through" technique, investigators placed large orders intended to "force [the dealers] to go to [their] supplier" and to lead investigators to the source of the methamphetamine. Investigators obtained court orders that allowed for

wiretaps, pen registers, and "pings," which provided GPS location data for each investigative subject's cell phone.

Rodriguez resided in New Paris and owned R & R Auto ("R & R"), an auto repair and resale business in Elkhart. Video surveillance frequently captured Moreida at R & R; he would later testify that he worked there occasionally, despite not being on the company's payroll. Wire surveillance also revealed that Moreida and Rodriguez telephoned each other frequently and used language that investigators believed to be coded references to methamphetamine.

On April 18, 2016, investigators conducted a hand-to-hand purchase of methamphetamine from Nava. Nava initially met with an undercover officer to hash out the terms of the deal, drove to Jaquez's house, and then delivered a quarter pound of methamphetamine to the undercover officer. In all, investigators conducted five hand-to-hand purchases from Nava and two from Jaquez. They "were trying to determine whether Mr. Jaquez ... was above or below Nava" in the drug operation's hierarchy.

On June 29, 2016, investigators conducted a hand-to-hand purchase of four ounces of methamphetamine from Moreida for $4,000. On August 23, 2016, an undercover officer ("UC 3749") went to Moreida's house and agreed to buy an additional half-pound of methamphetamine for $6,400. Moreida told UC 3749 "that he could make it happen; [but that] it would have to be later in that day." Afterwards, wire surveillance revealed that Moreida telephoned Rodriguez, drove to meet him in Elkhart, and that the men drove together to Rodriguez's house in New Paris, remaining there only briefly. Moreida then dropped Rodriguez off at R & R and delivered one-half pound of methamphetamine to UC 3749.

On September 10, 2016, wire surveillance of Nava and Jaquez's cell phone conversations revealed "that they were out" of methamphetamine. Tr. Thereafter, GPS data revealed that Rodriguez drove seventy miles to Fort Wayne, remained there for only twenty minutes, and returned to Elkhart. While Rodriguez was en route back to Elkhart, investigators overheard Jaquez and Moreida saying "that the meth, or the dope, or the onions, or whatever they were calling it that day, was coming, [and] it was close. So, [investigators] kind of put two and two together."

Investigators were in concealed positions outside Rodriguez's house when he returned home. They watched as he backed his truck up to his garage, removed a cardboard box from the truck bed, and carried the box into the garage. Approximately twenty minutes later, Rodriguez replaced the same

2

box on his truck bed and covered it with a heavy blanket. An investigator followed in an unmarked car as Rodriguez drove to Jaquez's house, backed up his truck to Jaquez's garage, removed the blanket, and carried the box into Jaquez's garage. Rodriguez left within ten minutes. After Rodriguez left, the wire surveillance team alerted the on-site surveillance team that Nava was now en route to Jaquez's house. Nava arrived soon thereafter, remained onsite only briefly, and then drove to see Juan Rivera, from whom investigators conducted several hand-to-hand purchases during this investigation.

On October 22, 2016, UC 3749 conducted a hand-to-hand purchase of methamphetamine from Moreida. On October 28, 2016, while he was at R & R Auto, Moreida sent a text message to UC 3749 and offered to sell him more methamphetamine. For this hand-to-hand purchase, in addition to wire surveillance and an on-site surveillance unit, investigators also enlisted helicopter surveillance support with video recording capacity. On-site undercover investigators observed as Moreida negotiated with UC 3749. Rodriguez was present for the negotiation, and both men appear in the helicopter surveillance video of the transaction. Moreida and UC 3749 agreed on an $11,000 price for one pound of methamphetamine.

Rodriguez and Moreida then drove to Rodriguez's house, remaining there briefly, during which time Rodriguez retrieved an item, believed to be a digital scale from a vehicle, before re-entering the house. The men then drove to a cell phone store in Elkhart. Rodriguez went into the store, while Moreida proceeded to deliver the methamphetamine to UC 3749 at a nearby dry-cleaning establishment. Afterwards, Moreida picked up Rodriguez.

By now, investigators suspected that Rodriguez was a major methamphetamine supplier: Moreida had both called Rodriguez and received several phone calls from Rodriguez around the time of transactions; Moreida had "trip[ped]" to Rodriguez, whose travel patterns and conduct suggested that he may be a supplier to Jaquez, Nava, and Moreida; and Rodriguez "was physically present or near" at the time of two hand-to-hand purchases coordinated by Moreida. Investigators also suspected that Rodriguez was transporting methamphetamine in R & R's vehicles and conducted surveillance on R & R "for several weeks" during the investigation.

Investigators executed a federal search warrant at Rodriguez's house on November 2, 2016. Rodriguez, his wife, and a young child were present when the search warrant was executed. The November 2, 2016[,] search yielded a significant quantity of methamphetamine in the basement, along

3

> with a measuring cup, two digital scales, two vacuum sealing machines, large, industrial resealable bags, bulk quantities of cellophane, a cutting agent, and at least six cell phones. Investigators also recovered methamphetamine crystals and smoking devices from Rodriguez's garage and 240 grams of methamphetamine and a large supply of resealable bags from the stereo speaker of a truck that was parked outside Rodriguez's house.

*Rodriguez v. State*, 102 N.E.3d 942 (Table), 2018 WL 2945715, 1-3 (Ind. Ct. App. June 13, 2018) (citations, headnotes, and footnotes omitted). The state charged Mr. Rodriguez with dealing in methamphetamine and corrupt business influence. *Id.* at 3. During pretrial proceedings, Messrs. Rodriguez and Moreida exchanged letters from jail. *Id.* at 4. Mr. Rodriguez "urged Moreida to reject the State's plea offer and to take the fall," and Mr. Moreida perceived these letters as threatening. *Id.* Following a jury trial in which Mr. Moreida testified against him, Mr. Rodriguez was found guilty. *Id.* at 8-9. He was sentenced to an aggregate term of 32 years in prison. *Id.* at 9.

On direct appeal, Mr. Rodriguez raised the following claims: (1) the trial court erred under Indiana law in denying his request for a speedy trial; (2) the trial court abused its discretion in denying his motion for severance of the drug dealing and corrupt business influence charges; (3) there was insufficient evidence to support his conviction; (4) the jury instructions related to "intent to deliver" were erroneous; and (5) his sentence was unduly long given his character and the nature of the offense. *Id.* at 1. The Indiana Court of Appeals rejected these arguments and affirmed. *Id.* at 9-17.

Mr. Rodriguez sought transfer to the Indiana Supreme Court asserting the following claims: (1) his speedy trial rights were violated; (2) the trial court erred in denying his motion to sever; and (3) the evidence was insufficient to support his

4

conviction. (ECF 16-7.) The petition was denied without comment. *Rodriguez v. State*, 110 N.E.3d 1147 (Table) (Ind. 2018). He did not seek review in the United States Supreme Court. (ECF 2 at 1.)

In October 2018, Mr. Rodriguez filed a *pro se* petition for post-conviction relief. *Rodriguez v. State*, 233 N.E.3d 996 (Table), 2024 WL 1209050, 2 (Ind. Ct. App. Mar. 21, 2024). Counsel later appeared on his behalf and amended the petition, asserting claims of ineffective assistance by Mr. Rodriguez's trial counsel. *Id.* Following a two-part evidentiary hearing, the petition was denied. *Id.* at 3-4.

Mr. Rodriguez, through appointed counsel, asserted one argument on appeal: that his trial counsel was ineffective in failing to challenge the search of his residence under the Indiana Constitution. *Id.* at 2-9. The Indiana Court of Appeals rejected this argument and affirmed the denial of post-conviction relief. *Id.* at 9. Mr. Rodriguez, through appointed counsel, sought transfer to the Indiana Supreme Court reasserting his ineffective-assistance-of-trial-counsel claim. (ECF 16-14.) The petition was denied without comment. *Rodriguez v. State,* 235 N.E.3d 136 (Table) (Ind. May 23, 2024).

In June 2024, Mr. Rodriguez filed a federal habeas corpus petition. *Rodriguez v. Warden*, 3:24-CV-469-TLS-JEM (N.D. Ind. closed Nov. 27, 2024). While the petition was pending, he sought leave from the Indiana Court of Appeals to pursue a successive post-conviction petition asserting new claims of alleged wrongdoing by law enforcement agents and additional grounds of ineffective assistance by trial counsel. (ECF 16-16.) His request for leave to file a successive post-conviction petition was denied by the Indiana

5

Court of Appeals in July 2024, so he was not permitted to litigate these claims in state court. (ECF 16-17.)

Back in federal court, after the state filed a response to his federal habeas petition, Mr. Rodriguez sought to "withdraw" his petition so that he could focus on pursuing additional remedies in state court to have his conviction set aside. *Rodriguez*, 3:24-CV-469-TLS-JEM, ECF 19. This request was granted, and his federal petition was dismissed without prejudice in November 2024. *Id.*

In March 2025, Mr. Rodriguez returned to federal court with a new habeas petition asserting the following claims: (1) his Fourth Amendment rights were violated because law enforcement agents "lied" in their warrant applications; (2) the prosecutor committed misconduct by withholding discovery and presenting "fabricated" evidence; (3) his trial counsel was ineffective in failing to challenge the search of his residence under the Fourth Amendment; (4) his post-conviction counsel was ineffective; (5) the search of his residence was unreasonable under the Fourth Amendment due to the agents' use of a flash-bang device; (6) the trial judge was biased against him and violated his due process rights; (7) his Sixth Amendment right to a speedy trial was violated; and (8) "cumulative errors" rendered his trial "fundamentally unfair."[1]  (ECF 2 at 4-6.)

---

[1] Mr. Rodriguez presents his grounds for relief in a rather confusing fashion and alternatively lists five and seven claims with various subparts. (ECF 2 at 4-7.) The court has renumbered the claims for ease of reference. He mentions additional claims in his traverse, including a Confrontation Clause claim and a due process claim premised on alleged "fraudulent evidence." (ECF 22.) These claims are not contained in his petition, and the court previously denied his motion to amend his petition to add new claims. (ECF 21.) The court does not discuss these claims.

The Respondent argues that Mr. Rodriguez's claims are procedurally defaulted. (ECF 16.) Mr. Rodriguez filed a traverse arguing that the default should be set aside for various reasons. (ECF 22.) He also filed a "Motion to Supplement Incomplete Record." (ECF 23.) The matter is now ripe for adjudication.

ANALYSIS

Mr. Rodriguez's petition is governed by the provisions of the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA), which allows a district court to issue a writ of habeas corpus "only on the ground that [the petitioner] is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Habeas corpus was intended as a "guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." *Gilbreath v. Winkleski*, 21 F.4th 965, 981 (7th Cir. 2021) (citation and quotations omitted). The court can grant an application for habeas relief only if it meets the stringent requirements of 28 U.S.C. § 2254(d), set forth as follows:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

This standard is "difficult to meet" and "highly deferential." *Hoglund v. Neal*, 959 F.3d 819, 832 (7th Cir. 2020) (citation omitted). "It is not enough for a petitioner to show

the state court's application of federal law was incorrect; rather, he must show the application was unreasonable, which is a 'substantially higher threshold.'" *Id.* (citation omitted). In effect, "[a] petitioner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Id.* (citation omitted).

Before considering the merits of a claim contained in a habeas petition, the court must ensure that the petitioner exhausted all available remedies in state court with respect to that claim. 28 U.S.C. § 2254(b)(1)(A); *Hoglund*, 959 F.3d at 832. The exhaustion requirement is premised on a recognition that the state courts must be given the first opportunity to address and correct violations of their prisoners' federal constitutional rights. *Davila v. Davis*, 582 U.S. 521, 528 (2017); *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). For that opportunity to be meaningful, the petitioner must fairly present his constitutional claim in one complete round of state review, including seeking discretionary review in the state court of last resort. *Baldwin v. Reese*, 541 U.S. 27, 30-31 (2004); *Boerckel*, 526 U.S. at 845. The companion procedural default doctrine, also rooted in comity concerns, precludes a federal court from reaching the merits of a claim when the claim was presented to the state courts and denied on the basis of an adequate and independent state procedural ground, or when the claim was not presented to the state courts and the time for doing so has passed. *Davila*, 582 U.S. at 528; *Coleman v. Thompson*, 501 U.S. 722, 735 (1991).

A habeas petitioner can overcome a procedural default by showing cause for failing to abide by state procedural rules and resulting prejudice. *Davila*, 582 U.S. at 528. "Cause" in this context means "an objective factor external to the defense that impeded the presentation of the claim to the state courts." *Crutchfield v. Dennison*, 910 F.3d 968, 973 (7th Cir. 2018) (citation and quotations omitted). "A factor is 'external to the defense' only if it 'cannot fairly be attributed to' the prisoner." *Id.* (citation omitted). A petitioner can also overcome a procedural default by establishing that the court's refusal to consider a defaulted claim would result in a fundamental miscarriage of justice because he is actually innocent. *House v. Bell*, 547 U.S. 518, 536 (2006).

A review of applicable records reflects that Mr. Rodriguez did not assert a Fourth Amendment claim, a prosecutorial misconduct claim, a judicial bias claim, or a claim of "cumulative error" in one complete round of state review, either on direct appeal or in the post-conviction proceedings. Because he did not present these claims on direct appeal or post-conviction review, they are defaulted. *Coleman*, 501 U.S. at 735. It appears he may have included some formulation of these claims in his request for leave to file a successive post-conviction petition in state court, but the Indiana Court of Appeals concluded that he did not meet the state law requirements for pursuing such relief. Under these circumstances, they are defaulted. *See Thomas v. Williams*, 822 F.3d 378, 384-85 (claim was "procedurally defaulted under either rule" when the petitioner tried to raise it for the first time in a successive post-conviction petition that the state did not allow him to file). Therefore, claims one (Fourth Amendment violation), two (prosecutorial misconduct),

9

five (Fourth Amendment violation), six (judicial bias), and eight (cumulative errors) are procedurally defaulted.

Turning to claim three (ineffective assistance by trial counsel), Mr. Rodriguez asserted an ineffective assistance claim in the post-conviction proceedings, but his claim was that his trial counsel was ineffective in not challenging the search of his residence under the Indiana Constitution. (ECF 16-10 at 11-19; ECF 16-14 at 9.) That is different from the claim he raises here, which is that trial counsel should have challenged the search under the Fourth Amendment of the United States Constitution. These claims are legally distinct. *See Carpenter v. State*, 18 N.E.3d 998, 1001 (Ind. 2014) ("Although Indiana's Section 11 and the Federal Fourth Amendment are textually identical, they are analytically distinct. The Fourth Amendment analysis turns on whether the subject has a reasonable expectation of privacy, while the Section 11 analysis turns on whether the police conduct was reasonable under the totality of the circumstances." (citation and quotations omitted)). Each ground of ineffective assistance is considered a separate claim for exhaustion purposes. *Stevens v. McBride*, 489 F.3d 883, 894 (7th Cir. 2007) (where petitioner complained about one aspect of counsel's performance in state proceeding but not the specific error he asserted in his federal habeas petition, claim was procedurally defaulted). Because Mr. Rodriguez did not present his claim about counsel's failure to mount a Fourth Amendment challenge to the search of his residence in one complete round of state review, the claim is procedurally defaulted. *Davila*, 582 U.S. at 528.

In claim four, Mr. Rodriguez asserts that his post-conviction attorney was ineffective in his presentation of the ineffective assistance of trial counsel claim,

10

presumably to excuse the procedural default of claim three.[2] As a general rule, errors by post-conviction counsel do not qualify as cause to set aside a procedural default. *Maples v. Thomas*, 565 U.S. 266, 280 (2012). The Supreme Court has recognized an exception to this rule, wherein ineffective assistance by post-conviction counsel can provide cause to set aside the default of a claim of ineffective assistance by trial counsel. *Trevino v. Thaler*, 569 U.S. 413 (2013); *Martinez v. Ryan*, 566 U.S. 1 (2012). This so-called *Martinez-Trevino* exception applies to prisoners in Indiana. *Brown v. Brown*, 847 F.3d 502, 513 (7th Cir. 2017). It is of no help to Mr. Rodriguez, however, because the exception does not apply to errors by post-conviction counsel at the appeal level; instead, it only applies to errors by post-conviction counsel that occur at the "initial-review collateral proceedings." *Martinez*, 566 U.S. at 16. Here, post-conviction counsel asserted a claim at the initial review stage of the post-conviction proceedings that Mr. Rodriguez's trial counsel was ineffective in not challenging the search of his residence under both the Fourth Amendment and the Indiana Constitution. (ECF 16-10 at 11; ECF 17-7 at 6.) However, Mr. Rodriguez abandoned the Fourth Amendment argument on appeal and argued only that trial counsel should have challenged the search under the Indiana Constitution. (ECF 16-10; ECF 16-14.) Because the alleged error resulting in a procedural default occurred at the appeal level, Mr. Rodriguez's invocation of *Martinez-Trevino* is unavailing.

---

[2] If he is asserting ineffective assistance by post-conviction counsel as a free-standing claim, this claim is not cognizable on federal habeas review. 28 U.S.C. § 2254(i) ("The ineffectiveness or incompetence of counsel during . . . [s]tate collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254.").

For completeness, the court recognizes that Mr. Rodriguez may be invoking *Martinez-Trevino* as a basis to set aside the default of claims one, two, five, six, and eight. However, *Martinez-Trevino* is a narrow exception that applies solely to review of defaulted claims of ineffective assistance of trial counsel, not to other types of defaulted claims. *Davila*, 582 U.S. at 529-30. In other words, errors by post-conviction counsel cannot be used to obtain review of defaulted claims of prosecutorial misconduct, judicial bias, due process, or alleged Fourth Amendment violations.[3] His invocation of this doctrine in another regard provides him no relief.

Turning to claim seven (speedy trial violation), Mr. Rodriguez asserted a speedy trial claim on direct appeal, but it was premised on the trial judge's failure to comply with Indiana law.[4] (ECF 16-3 at 21-25.) To fairly present a claim to the state courts, the petitioner must have alerted the courts to the "federal nature" of the claim. *Baldwin*, 541 U.S. at 33; *see also Hoglund*, 959 F.3d at 832-33 ("The basic question is whether in concrete, practical terms. . . the state court was sufficiently alerted to the federal constitutional

---

[3] And if he is trying to assert ineffective assistance by his counsel on direct appeal as cause to set aside the default, he did not exhaust any claim in the state proceedings regarding the performance of this attorney, a necessary prerequisite for using it as cause to excuse a default on habeas review. *Edwards v. Carpenter*, 529 U.S. 446, 451-52 (2000).

[4] The trial judge rejected Mr. Rodriguez's request for a speedy trial under Indiana Criminal Rule 4 because he made the request pro se even though he was represented by counsel. *See Rodriguez*, 2018 WL 294715, at 9. Indiana law prohibits this type of "hybrid" representation. *See Underwood v. State*, 722 N.E.2d 828 (Ind. 2000) (holding that once counsel is appointed, the defendant must speak to the court through his or her attorney, and trial court was not required to respond to defendant's pro se speedy trial request). Mr. Rodriguez's counsel stated in open court that he thought it would harm Mr. Rodriguez's interests to invoke his speedy trial rights, because counsel could not adequately prepare for trial within the 70 days allotted by Indiana Criminal Rule 4 given the complexity of the case. (ECF 17-9 at 15-21.)

12

nature of the issue to permit it to resolve that issue on a federal basis."). The applicable law surrounding a state law speedy trial claim is analytically distinct from a Sixth Amendment speedy trial challenge, because Indiana expressly quantifies the number of days in which a defendant must be brought to trial. Ind. Crim. R. 4. Conversely, the Supreme Court has expressly "refused to quantify the right into a specified number of days or months or to hinge the right on a defendant's explicit request for a speedy trial" under the Sixth Amendment, and instead uses a "balancing test" to determine whether the right was violated. *Vermont v. Brillon*, 556 U.S. 81, 89–90 (2009). Mr. Rodriguez cannot recharacterize his claim as being premised on the Sixth Amendment when he presented a claim to the state courts that was based on state law.[5] If he is asking the court to review the state court's application of Indiana law, such a claim is not cognizable on federal habeas review. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *see also Earls v. McCaughtry*, 379 F.3d 489, 495 (7th Cir. 2004) (federal habeas court has no authority to "second-guess state courts in interpreting state law"). Therefore, this claim is also defaulted.

Mr. Rodriguez asserts in his traverse that all of his defaults should be excused because he is actually innocent. (ECF 22 at 12.) Under this exception, "actual innocence, if proved, serves as a gateway through which a petitioner may pass" to obtain review of a defaulted claim. *McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013). In this context, "actual innocence means factual innocence, not mere legal insufficiency." *Bousley v. United States*,

---

[5] If Mr. Rodriguez is trying to blame his attorney on direct appeal for the error, he did not exhaust a claim regarding this attorney's performance in the state proceedings so it cannot supply cause to excuse the default. *Edwards*, 529 U.S. at 451-52.

13

523 U.S. 614, 623 (1998) (quotations and citation omitted). To raise a credible claim of actual innocence, the petitioner must have "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence[.]" *Schlup v. Delo*, 513 U.S. 298, 324 (1995); *see also Hayes v. Battaglia*, 403 F.3d 935, 938 (7th Cir. 2005) (petitioner claiming actual innocence "must have documentary, biological (DNA) or other powerful evidence: perhaps some non-relative who placed him out of the city, with credit card slips, photographs, and phone logs to back up the claim"). The petitioner must demonstrate that in light of this new evidence, "it is more likely than not that no reasonable juror would have convicted him." *Schlup*, 513 U.S. at 327. This standard is "demanding" and can be met only in "extraordinary" circumstances. *House v. Bell*, 547 U.S. 518, 538 (2006).

Mr. Rodriguez does not point to reliable new evidence to demonstrate that he is factually innocent of dealing methamphetamine and running a corrupt business. Instead, he argues that his constitutional rights were violated throughout the criminal proceeding; and in his view, "no reasonable jury would convict with proper constitutional protections." (ECF 22 at 17.) However, that is not the applicable standard. *Schlup*, 513 U.S. at 327. He does not offer new evidence to undercut the factual underpinnings of his conviction, namely, the large amount of methamphetamine found in his home (along with digital scales, resealable bags, a cutting agent, and other evidence of a large-scale drug operation), the phone records, the testimony of Mr. Moreida about Mr. Rodriguez's involvement in the drug ring, and the testimony of investigators regarding his actions during their surveillance. *See Rodriguez*, 2018 WL 2945715 at 2-8. His allegations about

14

irregularities in the warrants and the improper use of a flash-bang device, which he claims put his family at risk, do not relate to factual innocence. In fact, the Supreme Court has recognized that the exclusionary rule, which requires the suppression of evidence obtained in violation of the Fourth Amendment as a deterrent to police misconduct, "deflects the truth-finding process and often frees the guilty." *Stone v. Powell*, 428 U.S. 465, 490 (1976).

He also points to what he believes are inconsistencies in the trial testimony of law enforcement agents, but evidence presented at trial is not considered "new" for purposes of an actual innocence claim. *See Schlup*, 513 U.S. at 324 (petitioner must present "new reliable evidence . . . *that was not presented at trial*" to show actual innocence) (emphasis added). He has not satisfied the demanding actual innocence exception. Because all of his claims are procedurally defaulted and he has not established cause to set aside the default, the petition must be dismissed.

As a final matter, Mr. Rodriguez filed a motion to supplement what he calls an "incomplete record." (ECF 23.) He says the record is "fundamentally incomplete and presents adequate adjudication of substantial constitutional violations involving fabricated federal warrant evidence, systematic denial of discovery rights, indefinitely sealed wiretap authorization, and judicial conflicts of interest[.]" (ECF 23 at 1.) It is not clear from his motion exactly what materials he is seeking to add to the record. The only document attached to the motion is an unsigned copy of a probable cause affidavit, purportedly from the 2016 investigation, seeking information from his cell phone. (ECF 23-1.)

Under AEDPA, federal habeas courts are not meant to be "an alternative forum for trying facts and issues," and instead the court's review is limited to "the evidence presented in the State court proceeding." *Woodson v. Mlodzik*, 129 F.4th 1036, 1041 (7th Cir. 2025) (citing *Cullen v. Pinholster*, 563 U.S. 170, 186 (2011)). AEDPA permits the court to expand the record with new evidence in only very narrow circumstances. 28 U.S.C. § 2254(e)(2); *Shinn v. Ramirez*, 596 U.S. 366, 379–80 (2022). "[I]f the record refutes the applicant's factual allegations or otherwise precludes habeas relief," there is no reason to expand the record. *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007). Here, the record precludes habeas relief because Mr. Rodriguez's claims are procedurally defaulted. The probable cause affidavit attached to his motion does not relate to the procedural default issue, nor does it assist him in showing actual innocence. Permitting him to add additional documents to the record related to the merits of his claims would be futile. His motion is denied.

Pursuant to Rule 11 of the Rules Governing Section 2254 Cases, the court must either issue or deny a certificate of appealability in all cases where it enters a final order adverse to the petitioner. To obtain a certificate of appealability, the petitioner must make a substantial showing of the denial of a constitutional right by establishing "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal quotation marks and citation omitted). As outlined, Mr. Rodriguez's claims are procedurally defaulted, and he does not present a meritorious basis for setting

aside his defaults. The court finds no reason to conclude that reasonable jurists would debate the court's procedural ruling or find a reason to encourage him to proceed further. Accordingly, the court declines to issue him a certificate of appealability.

## CONCLUSION

For these reasons, the court:

(1) DENIES the petitioner's motion to supplement (ECF 23);

(2) DENIES the petition (ECF 2);

(3) DENIES the petitioner a certificate of appealability; and

(4) DIRECTS the clerk to close this case.

SO ORDERED.

October 23, 2025                               *s/ Damon R. Leichty*
                                                                Judge, United States District Court